J-S21008-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| TYRON DIXON-TILDON, | |
| Appellant | No. 3438 EDA 2013 |

Appeal from the Judgment of Sentence August 5, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR0008638-2012

BEFORE:  BOWES, JENKINS, and PLATT,* JJ.

MEMORANDUM BY BOWES, J.:                    **FILED JUNE 16, 2015**

Tyron Dixon-Tildon appeals from the judgment of sentence of life imprisonment that the court imposed after a jury found him guilty of first-degree murder, carrying an unlicensed firearm, and recklessly endangering another person ("REAP").  After careful review, we affirm.

The trial court outlined the Commonwealth's evidence:

> On the evening of October 6, 2006, Denise Chandler drove to the intersection of N. Cleveland Street and W. Cumberland Street, intending to purchase a bag of heroin from Mark Jordan. Chandler arrived at the intersection and found Jordan standing outside of a bar.  Chandler drove to Jordan, asked if he was carrying heroin, and invited him to the car.  Once Jordan entered the car, Chandler parked on the corner of Cleveland and Cumberland Streets.

> As Chandler gave Jordan money for the drugs, gunshots rang out.  Chandler attempted to pull out from her parking spot, but the defendant crossed in front of her car on foot with a black revolver in his hand, forcing Chandler to wait until he entered

* Retired Senior Judge assigned to the Superior Court.

the car in front of her. Jordan looked down Cleveland Street and saw "a lot of people running, but [the defendant] was the only one coming down Cleveland. They was all running away from where Bilal[1] was. He ran right past the car and he looked right at me when I was in the car."

After the defendant stepped into that car, Chandler forced her way in front of the defendant, honking her horn and speeding out of her parking spot onto York Street. Suddenly, Jordan exclaimed, "Stop, stop, that's my boy." Chandler stopped the car; Donnell Goulbourne ran up to Chandler's car yelling, "Let me get in, let me get in, they shootin!" Chandler let Goulbourne into her car. Upon entering, Goulbourne said, "I been hit [sic]." "He was asking how long to the hospital and he was saying he was short of breath and that he was going to die. He kept saying that. I didn't know he was shot until he said Bilal shot him when he was chasing us in the car."

Goulbourne then suddenly exclaimed, "There he is!" Chandler turned towards the driver's side window, through which she saw the defendant point a gun in her direction from his position inside of the car. Goulbourne exclaimed, "Pull out, that's who shot me." Chandler sped off; a car chase ensued, during which Chandler ran at least two red lights and nearly collided with a van. Prior to getting to the hospital, Chandler spotted two police cars and pulled up to them. Jordan exited the car and helped to move Goulbourne into the back of one of the police cars. Goulbourne was taken to Temple University Hospital, where he was pronounced dead at 11:40 p.m.

Trial Court Opinion, 6/3/2014, at 1-3. Five days after the shooting, Appellant traveled to the Middle East, where he remained for five and one-half years. N.T., 7/31/13, at 225. Appellant was arrested in Amman,

_____

[1] Witnesses referred to Appellant as both Bilal and Tyron at trial.

Jordan and brought back to the United States by United States Marshals on April 29, 2012.

The jury found Appellant guilty of the aforementioned crimes, and he was sentenced on August 5, 2013. The following day, Appellant filed a post-sentence motion, which was denied by the trial court. This timely appeal followed. The trial court directed Appellant to file a concise statement of matters complained of on appeal, and Appellant complied. The trial court authored its Rule 1925(a) opinion on June 3, 2014, and this matter is now ready for our review. Appellant raises four questions on appeal.

1. Did the lower court err by overruling Appellant's objection and/or motions for a mistrial during and after the prosecutor's closing, in which the prosecutor improperly commented on Appellant's silence both pre- and post-arrest?

2. Did the lower court err by permitting the Commonwealth to introduce evidence indicating that when the Appellant travelled to the Middle East, he was facing felony criminal charges in Pennsylvania?

3. Did the lower court err by admitting the decedent's purported statements tending to inculpate Appellant as an excited utterance, a dying declaration, and/or another exception to the hearsay rule?

4. Did the lower court err by permitting the Commonwealth to introduce evidence that Denise Chandler knew Appellant because she had previously purchased narcotics from him where such evidence was irrelevant and violated Pa.R.E. 404(b)?

Appellant's brief at 9.

Appellant's first issue relates to the denial of a mistrial due to improper argument by the Commonwealth. We review the trial court's decision to deny a mistrial for an abuse of discretion. *Commonwealth v. Boone*, 862 A.2d 639, 646 (Pa.Super. 2004). "A mistrial is necessary only when 'the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict.'" *Commonwealth v. Lopez*, 47 A.3d 74, 83 (Pa.Super. 2012) (citing *Commonwealth v. Parker*, 957 A.2d 311, 319 (Pa.Super. 2008)).

In evaluating specific comments made by a party, we note that "a comment is constitutionally and statutorily forbidden if 'the language used by the prosecutor is intended to create for the jury an adverse inference from the failure of the defendant to testify.'" *Commonwealth v. Trivigno*, 750 A.2d 243, 248 (Pa. 2000) (citations omitted). This rule does not expressly prohibit all comments by a prosecutor regarding a defendant's silence. Instead, such a remark "may be appropriate if it is in fair response to the argument and comment of defense counsel." *United States v. Robinson*, 485 U.S. 25, 31 (1988).

Appellant first argues that the Commonwealth improperly commented on his post-arrest silence and decision not to testify at his criminal proceeding. The Commonwealth counters that its argument was fair

response to the following remarks made by Appellant's counsel in his own summation:

Defense: Now, what is this evidence? Well, first of all, let's look the way we look at any other case at what sort of evidence there is that exist. Are there statements by the defendant? Well, the answer to that I think is yes and no. There is no confession of any sort by the defendant. There is no statement from the marshal he told me on the plane or he did this or did that, there's nothing like that. We do have information that there was a written document that he executed that was provided to the marshal. What we don't know –

Commonwealth: Objection, Your Honor.

The Court: Sustained.

N.T., 8/2/13, at 198-199. The document referenced by Appellant's counsel was one allegedly signed by Appellant in the presence of United States State Department officials in Yemen. N.T., 8/1/13, at 36; Appellant's brief at 15-16. The document was not presented to the jury. **Id**.

Appellant's allegation relates to the following closing argument offered by the Commonwealth:

Commonwealth: You can lay a lot at the Commonwealth's feet that we're responsible for, for presenting the reasonable doubt. One thing I want to say to you right now that I cannot understand or accept and I will not accept the burden of is not presenting to you a statement from the defendant which counsel has mentioned

several times you do not have. One man, thanks to the protection of the Constitution, and I'm not saying to make any conclusions about it because the Constitution protects it, but counsel cannot get up here and say, well, you haven't heard any statements from the defendant. Well, this defendant at any time could have come back to the Commonwealth and said I want to make a statement –

Defense:        Objection.

The Court:      Overruled.

Commonwealth:   – I want to tell you why I fled to Yemen, I want to tell you what happened there, and he has failed to do so. The Constitution says you can't hold that against him, but counsel cannot argue to you that the Commonwealth has not presented a statement from the defendant when the defendant has not chosen to make one to you and tell you what he wants to say about that.

N.T., 8/2/13, at 232-233.

Appellant argues that the district attorney improperly referred to Appellant's post-arrest silence in her summation in a way that violated his constitutionally protected right against self-incrimination. Indeed, reference at trial to an accused's silence while in police custody is a violation of the constitutional privilege against self-incrimination. **Commonwealth v. Molina**, 104 A.3d 430, 446 (Pa. 2014) (citations omitted).

As well-founded and valued as the privilege against self-incrimination may be, it is not without exception. Pertinent here is the exception

recognized when counsel responds to a claim made by a criminal defendant or defendant's counsel at trial, commonly known as the exception for fair response. Our Supreme Court has acknowledged that, "where a prosecutor's reference to a defendant's silence is a fair response to a claim made by defendant or his counsel at trial, there is no violation of the Fifth Amendment privilege against self-incrimination." **Commonwealth v. Copenhefer**, 719 A.2d 242, 251 (Pa. 1998) (citing **United States v. Robinson***, 485 U.S. 25, 32 (1988)). "The protective shield of the Fifth Amendment may not be converted into a sword that cuts back on an area of legitimate inquiry and comment by the prosecutor on the relevant aspects of the defense case." **Id***. (citing **United States v. Hasting***, 461 U.S. 499 (1983)).

Appellant urges that argument made by counsel for the Appellee was not fair response and constituted harmful error. In reply, the Commonwealth posits that the comments were fair response to Appellant's counsel's reference to the absence of any statement from Appellant and also that any resulting prejudice was negated by the court's curative instructions to the jury. We agree with the Commonwealth.

This Court recently examined a similar question of error in **Commonwealth v. Adams**, 39 A.3d 310 (Pa.Super. 2012) *aff'd*, 104 A.3d 511 (Pa. 2014). Therein, we evaluated defense counsel's statements, which

discussed his client's silence, in closing argument. Specifically, counsel sought to excuse his client's silence by explaining that speaking or testifying "isn't the code there. You don't talk. You don't say anything. That's what everybody does. They don't like talking to the police for a reason." *Id*. at 32. Counsel then went on to discuss the implications of being known as a "snitch." *Id.* In response, the Commonwealth noted in part that the defendant "says I don't have anything to say to you. He chooses not to speak and he chose to say that. He didn't choose to say, whoa, I got an alibi. No prison for me. You're not catching me on a murder rap. He says I have nothing to say to you." *Id*. at 315.

The *Adams* Court labeled the appellant's counsel's comments about his client's silence a "tactical decision." *Id*. at 320. In making such a decision, counsel "opened the door to the [Commonwealth] making responsive closing remarks about Appellant's silence." *Id*. This Court ultimately affirmed the trial court's decision to deny a new trial based upon the Commonwealth's fair response argument but vacated the judgment of sentence on unrelated grounds.

In Appellant's argument herein, counsel indicated that the Commonwealth had not produced or pointed to any "confession of any sort by the defendant" before noting that there existed a written statement by his client that the Commonwealth failed to produce. N.T., 8/2/13, at 198-

199. The Commonwealth properly responded to Appellant's counsel's use of his client's Fifth Amendment privilege as a sword to attack the comprehensiveness and credibility of its case. The Commonwealth was certainly responsible for proving its case beyond a reasonable doubt, but it is not required to produce any statement or confession from Appellant regarding his own conduct. As argued by counsel for the Commonwealth in her closing argument, "counsel cannot argue to you that the Commonwealth has not presented a statement from the defendant[.]" N.T., 8/2/13, at 233.

As in *Adams, supra*, counsel for Appellant made a tactical decision to attempt to exploit a perceived weakness in the Commonwealth's case; in doing so, he opened the door to responsive comments by the Commonwealth's counsel. We find that the closing argument advanced by the Commonwealth was a fair response to her counterpart's own. Unlike *Adams*, however, the Commonwealth's comments herein did not use Appellant's silence to indicate guilt. Instead, his comments were offered to address or refute Appellant's implication that the Commonwealth had withheld certain evidence from the jury. Hence, the Commonwealth's comments in closing argument were not improper, and we affirm the trial court's decision to overrule Appellant's objection to the Commonwealth's fair response argument and motion for a mistrial.

Appellant's remaining issues relate to the admissibility of evidence and whether the trial court properly permitted the Commonwealth to offer each of the several statements. Generally, the admission of evidence "is a matter vested within the sound discretion of the trial court, and such a decision shall be reversed only upon a showing that the trial court abused its discretion." *Commonwealth v. Gonzalez*, 109 A.3d 711, 726 (Pa.Super. 2015), *reargument denied* (Mar. 24, 2015). A trial court must "weigh the relevance and probative value of the evidence against the prejudicial impact of that evidence." *Id*. "Although a court may find that evidence is relevant, the court may nevertheless conclude that such evidence is inadmissible on account of its prejudicial impact." *Commonwealth v. Reid*, 811 A.2d 530, 550 (Pa. 2002).

Appellant's second argument specifically pertains to his decision to travel from Philadelphia to Egypt and Amman, Jordan in October 2006, just five days after the instant murder. He offered the testimony of Khayyan Dixon-Tildon, Appellant's brother, and Tammy Cox, Appellant's sister-in-law, to support his contention that he did, in fact, leave the country five days after the shooting for which he was convicted in order to study Islam. N.T., 8/2/13, at 111-14, 132-34. In response, the Commonwealth presented evidence that there were pending felony charges to rebut the inference that Appellant's purpose for traveling to the Middle East was for religious or

personal reasons. Testimony included verification that Appellant had been present for each of his multiple pre-trial listings but failed to appear for his scheduled three-day trial. Appellant argues that reference to his pending charges was improper prior bad acts evidence or, at the very least, that the acknowledgement that his charges were felonies was unduly prejudicial. However, because the Commonwealth's evidence directly challenged the inference that Appellant advocated and was therefore proper rebuttal evidence, the trial court did not err in admitting it.

Rebuttal evidence is proper where it is offered to discredit or weaken testimony of an opponent's witness. *Commonwealth v. Smith*, 694 A.2d 1086 (Pa. 1997). Our standard for reviewing the admission of rebuttal evidence is a deferential one, as "it is well settled that the admission or rejection of rebuttal evidence is within the sound discretion of the trial court." *Commonwealth v. Bond*, 985 A.2d 810, 829 (Pa. 2009). "An abuse of discretion will not be found based on a mere error of judgment, but rather exists where the court has reached a conclusion [that] overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." *Commonwealth v. Bryant*, 67 A.3d 716, 726 (Pa. 2013) (quoting *Commonwealth v. Eichinger*, 915 A.2d 1122, 1140 (Pa. 2007)). Herein, we find no such abuse.

Mindful that we must affirm the trial court's decision absent a finding of abuse of discretion, we now turn to whether the trial court erred in specifically allowing evidence that Appellant was subject to felony charges. In its 1925(a) opinion, the trial court explains that the reference was necessary to explain "why the defendant had to appear at multiple pre-trial listings, and why the defendant's bail was $25,000." Trial Court Opinion, 6/3/2014, at 9, fn 10. The additional fact that Appellant left the country with knowledge of these pending charges, as well as the seriousness thereof, and the substantial sum of money involved undermined Appellant's contention that he left solely for his educational and religious development. Further, the trial court instructed the jury that it may only find the Appellant guilty if it was "convinced by the evidence that he committed the crime here and not because of that other matter." *Id.*

Evidence of the prior bad acts was properly admitted as rebuttal evidence relating to Appellant's motive for leaving the country. We find that specific acknowledgment that Appellant was subject to felony charges was not so prejudicial that the curative instructions offered by the court were ineffective. The instruction mitigated any possible prejudicial effect of the severity of the charges. Accordingly, we affirm the trial court's decision in this matter.

Appellant's third contention is that the trial court erred in admitting the decedent's statements that 1) "Bilal did it" and 2) "it was over drugs." In support of his argument regarding the first statement, Appellant avers that the decedent's statement to Chandler that "Bilal did it" should have been excluded because it was contradicted by the decedent's statement to the police after the victim was transferred to the police car that he did not know who shot him.

Appellant does not contest that the decedent's statement to Chandler that "Bilal did it" was, in fact, a dying declaration for the purposes of Pa.R.E. 404(b)(2), which excepts from the general hearsay prohibition a "statement that the declarant, while believing the declarant's death to be imminent, made about its cause or circumstances." Instead, Appellant argues that Detective Steven Mostovyk's testimony that "on the way [to the hospital], [the decedent] said that he didn't know who shot him" rendered Chandler's earlier statement inadmissible as inconsistent.

Again recalling our abuse of discretion standard and after review of the relevant testimony, we reject Appellant's argument. In support of his position, Appellant points solely to **Commonwealth v. Frederick**, 498 A.2d 1322, 1324 (Pa. 1985), which examined various dying declarations by a victim. Statements relating to the identification of the accused were consistent to all witnesses; statements relating to ancillary matters were

- 13 -

inconsistent among the witnesses. The trial court, which was affirmed on appeal, ruled that the jury was responsible for evaluating the credibility of each witness and that the admission of all statements was proper, noting specifically that "inconsistency is not a proper basis for excluding dying declarations." While Appellant's observation that the **Frederick** Court acknowledged that the decedent's inconsistencies related to secondary matters rather than identification, there is no indication that the holding would be confined to such a limited circumstance. Further, as our Supreme Court held in **Frederick**, any possible inconsistency is best left for the jury to decide, as "the determination of the credibility of a witness is within the exclusive province of the jury." **Commonwealth v. Crawford**, 718 A.2d 768, 772 (Pa. 1998). "[T]he fact-finder is free to believe all, part, or none of the evidence[.]" **Commonwealth v. Diamond**, 83 A.3d 119, 134 (Pa. 2009) (citations omitted).

Appellant's related contention that the decedent's statement that the shooting "was over drugs" was inadmissible is also meritless. Specifically, Appellant argues that the statement was inadmissible due to vagueness and indefiniteness, an argument presented for the first time in Appellant's brief. Though we note that Appellant did not include this specific allegation in his 1925(b) statement, it is his lack of objection to the testimony at trial that is fatal to his argument. Accordingly, this issue is waived. Pa.R.A.P. 302(a).

Finally, Appellant alleges that the trial court erred in permitting Chandler's testimony that she knew Appellant because she had previously purchased drugs from him. The exchange was as follows:

Commonwealth: Did you know that young man?

Chandler: Yes, I did.

Commonwealth: And who was that?

Chandler: That was Bilal.

Commonwealth: And how did you know Bilal?

Chandler: I knew Bilal through coming up that way because I had, you know, been coming up there at one time on a regular basis.

Commonwealth: To do what?

Chandler: To purchase.

Commonwealth: If you'd tell the jury, sorry, not me.

Chandler: To purchase drugs.

N.T., 7/31/13, at 99-100. Specifically, Appellant avers that: 1) the statement was irrelevant to the material facts in the case; and 2) even if relevant, the statement should have been excluded under Pa.R.E. 404(b)(2) because its prejudicial effect outweighed the statement's probative value. Appellant's brief at 27. Rule 404(b)(1) prohibits the admission of "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Rule 404(b)(3) holds that such evidence "may be admitted in a criminal case only

- 15 -

upon a showing that the probative value of the evidence outweighs its potential for prejudice."[2]  Furthermore, "evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact." *Commonwealth v. Drumheller*, 808 A.2d 893, 904 (Pa. 2002) (citation omitted).

Here, Appellant argues that evidence that Chandler knew Appellant because she bought drugs from him was irrelevant.  We do not agree. Chandler's identification of and familiarity with Appellant render the facts that Appellant was present at the scene and pointed a gun at Chandler's vehicle, N.T., 7/31/13, at 102, more probable than they would have been without testimony.[3]  For the aforementioned reasons, we therefore find that the evidence was relevant to a material fact.

We also disagree with Appellant's contention that the testimony was more prejudicial than probative.  As later testimony indicated that drugs were the likely motive behind the shooting, Chandler's testimony that she

_____

[2] Cited language reflects Pa.R.E. 404(b) at the time of Appellant's trial, which was prior to the January 2013 revisions.
[3] We also note that, in his post-sentence motion, Appellant specifically argues that his murder conviction is against the weight of the evidence in part because Ms. Chandler could not "definitively and credibly tie [Appellant] to the scene of [decedent's] shooting and subsequent car chase," thereby acknowledging the materiality of Chandler's identification.  Appellant's Post-Sentence Motion, 6/6/13,  at 3.

knew Appellant because of their drug-related interactions was abundantly probative. ***Commonwealth v. Johnson***, 838 A.2d 663 (Pa. 2003) (admitting testimony of a witness to a murder regarding the accused's drug involvement to establish that defendant-appellant's motive related to his drug enterprise). That the court **could** have required Chandler to sanitize her testimony by stating that she knew Appellant because he sold "water ice" outside his residence is of no consequence, as full testimony regarding Chandler's familiarity with Appellant was part of the natural development of the facts given the circumstances surrounding the shooting. ***Commonwealth v. Green***, 76 A.3d 575, 583 (Pa.Super 2013) (citations omitted). For the aforementioned reasons, we reject Appellant's arguments relating to Chandler's testimony and affirm the trial court's decision to admit her statements.

Having found no abuse of discretion in the admission of the challenged evidence, we affirm.

Judgement of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>6/16/2015</u>