J-S29009-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| WILLIAM FERGUSON, | |
| Appellant | No. 3271 EDA 2018 |

Appeal from the PCRA Order Entered October 19, 2018
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0003810-2012

BEFORE:  BENDER, P.J.E., LAZARUS, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED JULY 26, 2019**

Appellant, William Ferguson, appeals from the post-conviction court's order denying his timely-filed petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  We affirm.

This Court previously summarized the facts and procedural history of Appellant's case, as follows:

> On December, 7, 2011, Sylvain Middleton and Appellant were drinking beer and smoking marijuana. They decided to purchase cocaine, and so Mr. Middleton called Keith Allen, a friend from whom Mr. Middleton had purchased cocaine previously.  Mr. Middleton and Mr. Allen arranged to meet in the area of Rugby and Upsal Streets in Philadelphia.
>
> Mr. Middleton and Appellant drove to the area together in Mr. Middleton's car.  However, Appellant exited the vehicle to meet an unknown person, and Mr. Middleton proceeded with Mr. Allen separately.

Mr. Middleton entered the front passenger seat of Mr. Allen's SUV to complete the drug transaction, whereupon Appellant entered the rear passenger seat, pointed a gun at Mr. Allen, demanded his money and drugs, and ordered Mr. Middleton out of the SUV. Mr. Allen placed drugs and money on the front seat. As Mr. Middleton exited the SUV, he heard multiple gunshots. He immediately left the area, driving away in his car.

Contemporaneously, Vanderick Desper was driving on Upsal Street when he passed Mr. Allen's SUV on the wrong side of the street up against a pole. Believing that an accident had occurred, Mr. Desper backed his car up to get a closer look and observed the other driver of the SUV being assaulted by someone in the back seat. Mr. Desper parked nearby and called 911 to report the assault. Following his initial 911 call, Mr. Desper observed a flash of light coming from inside … the SUV, so he called 911 a second time.

Officers Jonathan Berryman and Daniel McMonagle received a radio call for an assault in progress at Upsal and Rugby Streets. Upon their arrival, they observed Appellant seated in the driver's seat of Mr. Allen's SUV. Appellant stated he was trying to get Mr. Allen to a hospital. The officers found Mr. Allen outside the vehicle, unresponsive, with multiple gunshot wounds. Mr. Allen was pronounced dead at the scene.

Officer Berryman observed a firearm inside the vehicle. Officer McMonagle frisked Appellant and recovered a nine-millimeter, semi-automatic firearm, as well as multiple fired cartridge cases [(FCCs)] from the SUV. Forensic evidence introduced at Appellant's trial established that the firearm recovered from the SUV was the murder weapon. On the night of the murder, Appellant tested positive for gunpowder residue on both of his hands.

Tasheima King was the registered owner of the murder weapon. Ms. King testified at Appellant's trial that she had purchased the firearm for another individual, but it went missing around the time Appellant visited her home in Columbia, Pennsylvania.

DNA samples were taken from the murder weapon, a fired cartridge case [(FCC)], and the sweatband of a Philadelphia Eagles hat found in the SUV. For comparison purposes, DNA samples were also taken from both the Appellant and Mr. Middleton. The victim's DNA was not tested. Mr. Middleton was excluded as a

- 2 -

contributor to any of the DNA evidence collected from the murder scene. Appellant's DNA was found on the slide area of the firearm; results were inconclusive on the trigger, but included DNA from an unknown male.[2] No discernible DNA was recovered from the [FCC].

> [2] Notably, Tammy Allen, the victim's wife, testified that the Eagles hat belonged to her husband.

Appellant testified on his own behalf. According to Appellant, he often engaged in drug transactions with the victim. On the night of the murder, Appellant and the victim drove together to complete a transaction. Upon their arrival at the predetermined location, Mr. Middleton entered the SUV with another person unknown to Appellant. According to Appellant, this unknown person assaulted and shot the victim but fled prior to the arrival of police. Appellant's father and cousin also testified on his behalf.

Following his trial in October 2013, a jury convicted Appellant of murder of the first degree, robbery, and several weapons-related offenses. The court imposed an aggregate sentence of life imprisonment without parole. Appellant filed a post-sentence motion that was denied without a hearing.

In April 2014, Appellant filed a petition seeking leave to appeal *nunc pro tunc*. The [PCRA] court granted his petition. In July 2014, Appellant appealed....

*Commonwealth v. Ferguson*, No. 2061 EDA 2014, unpublished memorandum at 1-4 (Pa. Super. filed Dec. 1, 2015) (one footnote omitted). On direct appeal, this Court affirmed Appellant's judgment of sentence. *Id.* He did not file a petition for allowance of appeal with our Supreme Court.

Instead, on February 17, 2016, Appellant filed a timely, *pro se* PCRA petition. Counsel was appointed and an amended petition was filed on Appellant's behalf raising three claims of trial counsel's ineffectiveness. At a brief hearing on September 20, 2018, the PCRA court stated its reasons for concluding that Appellant's claims were meritless, and notified Appellant of its

intent to dismiss his petition without an evidentiary hearing pursuant to Pa.R.Crim.P. 907. **See** N.T. Hearing, 9/20/18, at 3-8. Appellant did not respond. On October 19, 2018, the court issued an order dismissing his petition.

Appellant filed a timely notice of appeal. The PCRA court did not order him to file a Pa.R.A.P. 1925(b) statement, but it filed a Rule 1925(a) opinion on December 20, 2018, referring to its statement at the September 20, 2018 hearing as supporting its dismissal of Appellant's petition.

Herein, Appellant states three issues for our review:

I. Did the [PCRA] court err in determining [that] trial counsel was not ineffective for failing to object to the prosecutor's comments on [Appellant's] post-arrest silence?

II. Did the [PCRA] court err in determining that trial counsel was not ineffective for failing to object to the admission of cell phone records when the prosecution failed to lay an adequate foundation for their admission?

III. Did the [PCRA] court err in finding that trial counsel was not ineffective for failing to introduce photographs of [Appellant's] hands?

Appellant's Brief at 4.

First, "[t]his Court's standard of review from the grant or denial of post-conviction relief is limited to examining whether the lower court's determination is supported by the evidence of record and whether it is free of legal error." **Commonwealth v. Morales**, 701 A.2d 516, 520 (Pa. 1997) (citing **Commonwealth v. Travaglia**, 661 A.2d 352, 356 n.4 (Pa. 1995)).

Where, as here, a petitioner claims that he received ineffective assistance of counsel, our Supreme Court has stated that:

> [A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner. To obtain relief, a petitioner must demonstrate that counsel's performance was deficient and that the deficiency prejudiced the petitioner. A petitioner establishes prejudice when he demonstrates "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." … [A] properly pled claim of ineffectiveness posits that: (1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice befell the petitioner from counsel's act or omission.

***Commonwealth v. Johnson***, 966 A.2d 523, 532-33 (Pa. 2009) (citations omitted).

Appellant first argues that his trial counsel was ineffective for failing "to object when the prosecutor improperly asked why [Appellant] had not mentioned Middleton's involvement to police and later commented in closing on [Appellant's] post-arrest silence." Appellant's Brief at 9-10.[1] In rejecting

---

[1] Appellant does not quote the specific remarks he challenges, but cites to pages of the transcript wherein the prosecutor questioned him about whether he told police officers at the scene, or the detectives who later interviewed him, that it was Middleton who committed the murder. ***See*** N.T. Trial, 10/17/13, at 267-68, 270-71. Appellant also points to the prosecutor's stressing, in closing remarks, that Appellant did not say to the responding

- 5 -

this ineffectiveness claim, the PCRA court concluded that Appellant had opened the door to these questions and arguments by the Commonwealth. The court explained:

> [Appellant] testified at his trial. On direct[-]examination, [Appellant] referred to what he said to police who arrived on the scene to find him trying to place the car in gear while the wounded victim lay outside the car on the ground next to the ... driver's side door. [Appellant] testified that he told the police that he was trying to get the victim to the hospital and that he repeatedly asked police to help him. [Appellant] further testified that he was trying to call 911, but that the victim's phone was locked and his phone was dead.
>
> Moreover, on direct examination, [Appellant] testified that he would not rat on the real perpetrator because it is against the street code. [The] [p]rosecutor then cross-examined [Appellant] about what he did and did not tell the police. For example, [the prosecutor questioned the fact that Appellant did not tell police] that he had just been robbed by two men who shot the victim and ran away. According to the law, where a prosecutor's reference to a defendant's silence is a fair response to a claim made by the defendant or his counsel at trial, there is no violation of the Fifth Amendment privilege against self-incrimination.
>
> In [**Commonwealth v.**] **DiNicola**[, 866 A.2d 329 (Pa. 2005)], our Supreme Court explained that where defense counsel opens the door to commentary of the defendant's pre-arrest silence there's no Fifth Amendment proscription precluding the raising of that silence in fair response to the defense argument. [The] Pennsylvania Supreme Court has held [that] when a criminal defendant waives his right to remain silent and testifies at his own trial, neither the United States, nor the Pennsylvania Constitution[,] prohibit a prosecutor from impeaching a defendant's credibility by referring to his pre-arrest silence. [**See id.** at 335 (citing **Jenkins v. Anderson**, 447 U.S. 231, 238 (1980)).]

---

police officers, "[s]ome man killed [the victim]. Some man tried to rob me. Two men got away. He said nothing like that." N.T. Trial, 10/18/13, at 146.

N.T. Hearing, 9/20/18, at 4-6.

Appellant offers no counter to the PCRA court's conclusion that his counsel opened the door to the at-issue comments by the prosecutor, which were then admissible to impeach Appellant's credibility.[2] Instead, Appellant's entire prejudice argument is the following sentence: "Further, the Pennsylvania Supreme Court has consistently found such remarks to be so prejudicial as to warrant a new trial." Appellant's Brief at 10 (citing **Commonwealth v. Costa**, 742 A.2d 1076 (Pa. 1999)). Notably, **Costa** involved *un-elicited remarks* by the prosecutor about Costa's post-arrest silence, as did the other case briefly cited by Appellant, **Commonwealth v. Turner**, 454 A.2d 537 (Pa. 1982). Appellant offers no discussion of the facts or holdings of **Costa** or **Turner**, nor explains why those decisions control in this case, where he testified about statements he made to responding officers to support his defense that he was not the shooter and was trying to help the victim get to the hospital. Accordingly, he has failed to demonstrate error in the PCRA court's conclusion that his trial counsel opened the door to the at-issue questions and arguments by the Commonwealth and, thus, counsel had no legitimate basis on which to object.

Next, Appellant contends that his trial counsel ineffectively failed to object to the Commonwealth's introduction of Appellant's and Middleton's phone records. Appellant insists that the records were not properly

---

[2] Appellant also does not contend that his trial counsel acted ineffectively in this regard.

- 7 -

authenticated under the 'business records' exception to the rule precluding hearsay, *see* Pa.R.E. 803(6), and they also did not "contain a certification page[,] which would permit their admission pursuant to Pa.R.E. 902(11) [(allowing the admission of an original or a copy of a domestic record that meets the requirements of Rule 803(6), as shown by a certification of the custodian or another qualified person that complies with Pa.R.C.P. 76)]." Appellant's Brief at 11.

The PCRA court again found that Appellant failed to demonstrate that he was prejudiced by counsel's alleged error. It explained:

> Had counsel objected, the Commonwealth would[ have] requested time to call the custodian of records and the [c]ourt would[ have] granted it. [Appellant] does not question the authenticity of the records. They were obtained pursuant to a warrant and bore the company logo.

N.T. Hearing at 6-7. The PCRA court also observed that Appellant used the phone records to show a "lack of calls between [himself] and … the witness Tasheima King[,]" who testified that Appellant "stole [the] gun from her house … that[ was] the weapon used in the homicide." *Id.* at 7. Finally, the PCRA court recognized that,

> as the Superior Court noted upon appellate review in this case, the evidence … was overwhelming. [*See Ferguson*, No. 2061 EDA 2014, unpublished memorandum at 8.] There was eyewitness testimony identifying [Appellant] as the perpetrator. There was physical evidence of gun powder residue on [Appellant's] hands. There was DNA evidence from [Appellant] on the slide of the gun and circumstantial evidence that [Appellant] had stolen the gun from the apartment of … Tasheima King.

N.T. Hearing at 8.

Appellant has offered no meaningful rebuttal to the PCRA court's conclusion that he was not prejudiced by defense counsel's failure to object to the Commonwealth's admission of the phone records. Instead, he cursorily claims that defense counsel's failure to object to the admission of these phone records "was highly prejudicial since the Commonwealth used the records to undermine [Appellant's] version of events[,]" and the jury must have found the documents important as they requested to view them during deliberations. Appellant's Brief at 11. However, Appellant does not explain why the phone records would not have been admitted had counsel objected, nor argues that the jury would have disregarded the strong evidence of his guilt and acquitted him without that evidence. Accordingly, we discern no error in the court's conclusion that Appellant was not prejudiced by counsel's failure to object to the admission of the phone records.

Lastly, Appellant claims that his trial counsel erred by not introducing "corroborative evidence" of photographs of his hands that were taken by police. *Id.* at 12. Appellant does not explicitly state what the photographs would have shown, but the Commonwealth infers that the photographs would have shown a wound, which "would have corroborated his testimony that he obtained the wound while struggling for the gun with the man he alleged committed the murder." Commonwealth's Brief at 14.

Again, the PCRA court found the prejudice prong of the ineffectiveness test unmet, explaining:

[Appellant] fails to show prejudice because the Commonwealth witnesses testified that [Appellant] struggled with someone in the car, the decedent. Mr. Desper, who was an eyewitness, testified to this. Also, Police Officer Berryman testified that he engaged in a struggle with [Appellant] while attempting to arrest him. As such, the photo[s] would not [have] further[ed] [Appellant's] particular version of events.

N.T. Hearing at 7-8.

As with his other issues, Appellant offers no response to the court's prejudice ruling, nor any discussion of why the jury's verdict would have changed had the photographs of his hands been admitted. Therefore, he has not demonstrated that the court erred in dismissing his final ineffectiveness claim.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/26/19